UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| THOMAS C. FIORILLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. |
| UNITED STATES DEPARTMENT OF EDUCATION; GREAT LAKES EDUCATIONAL LOAN SERVICES, INC.; and EXPERIAN INFORMATION SOLUTIONS, INC., | ) ) ) ) ) |
| | ) |
| Defendants. | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, THOMAS C. FIORILLE, by and through his undersigned Counsel, alleges the following against Defendants Betsy Devos, United States Department of Education (hereafter "DOE"), Great Lakes Educational Loan Services, Inc. (hereafter GLELSI) and Experian Information Solutions, Inc. (hereafter "Experian"):

### PRELIMINARY STATEMENT

1. This is an action for actual, statutory, and punitive damages, costs, and attorneys' fees brought pursuant to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §§ 1681a–x.

2. Plaintiff has been the victim of what is now a common crime – identity theft. Fraudsters used Plaintiff's personal information electronically to obtain a Department of Education student loan without Plaintiff's knowledge and consent.

3. Plaintiff has asserted the factual truth – the account does not belong to him and that he did not authorize the account. Yet, DOE/GLELSI continues its collection attempts.

4. DOE/GLELSI has reported the fraudulent student loan account to Experian. Plaintiff disputed the inaccurate information to Experian as well, to no avail.

5. The FCRA demands reporting agencies like Experian utilize reasonable procedures to assure the maximum possible accuracy of the information they report. 15 U.S.C. § 1681e(b). When a consumer disputes an item of information, the agency must investigate the dispute and, if the information cannot be verified, delete it. 15 U.S.C. § 1681i.

6. Consumer reporting agencies ("CRAs") that create consumer reports, like Experian are charged with using reasonable procedures designed to ensure the maximum possible accuracy of the information they report. It is not enough for them to simply parrot information they receive from entities like DOE/GLELSI, particularly where a consumer makes a dispute about information reported.

7. Also when a consumer disputes the inaccuracy of information with Experian, it must transmit the dispute to the entity who furnished the information, here DOE/GLELSI. The FCRA demands that each party separately conduct a reasonable investigation of the consumer's dispute and correct or delete information they learn to be inaccurate or cannot otherwise verify.

8. Plaintiff brings claims under § 1681e(b) against Experian because it reported the inaccurate information regarding the DOE/GLELSI account. When Plaintiff disputed the inaccuracies, Experian did not reasonably investigate, also violating § 1681i.

9. The Consumer Financial Protection Bureau has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy" Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017). This is particularly true as to how Experian has complied with their now 50-year-old obligation to conduct a meaningful accuracy investigation. Experian has been repeatedly sued by consumers, sanctions by regulators and reprimanded by both District and Appellate courts to do more than an automated

parroting of what their customer-creditors instruct. Had they followed that advice and heeded those warnings, the Plaintiff would not have been harmed.

10. Likewise, DOE/GLELSI violated the FCRA, Section 1681s-2(b), when it received Plaintiff's disputes from Experian and failed to reasonably investigate those disputes. Instead, discovery will show all DOE/GLELSI did was consult its own records about the account and confirm to the agencies the inaccurate information it was already reporting.

## JURISDICTION AND VENUE

11. This Court has jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C. § 1367.

12. Venue is proper in this District and Division because the violations described in this Complaint occurred in this District, and each of the Defendants transact business within this District and Division.

## PARTIES

13. Plaintiff Thomas C. Fiorille is a natural person who resides in Mont Clair, California. He is a "consumer" as defined in 15 U.S.C. § 1681a(c).

14. The United States Department of Education (hereafter "DOE") is a federal agency that claims it entered into a student loan contract with Plaintiff.

15. DOE is a "furnisher" of information as governed by 15 U.S.C. § 1681s-2.

16. GLELSI is a servicer of student loans and a "furnisher" of information as governed by 15 U.S.C. § 1681s-2.

17. Defendant, Experian Information Solutions, Inc. is headquartered in Costa Mesa, California.

18. Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f) and it disburses consumer reports to third parties for monetary compensation.

## FACTUAL ALLEGATIONS

### *Sections 1681e(b) and 1681i(a) of The Fair Credit Reporting Act Require Substantive Investigations and Prohibit Mere "Parroting" of Experian's Creditor-Customers*

19. "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); . . . . In enacting FCRA Congress adopted a variety of measures designed to insure that agencies report accurate information." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001). "In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

20. "Section 1681e(b) sets forth the CRAs' du[t]y:

> (b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

*Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

21. Section 1681i(a), on the other, hand requires much more from a CRA after a consumer has placed it on notice of an inaccuracy through his dispute:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed

> information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . before the end of the 30-day period[.]

15 U.S.C. § 1681i(a)(1)(A).

22. Section § 1681i(a) imposes "a duty . . . to make reasonable efforts to investigate and correct inaccurate or incomplete information brought to its attention by the consumer." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991). "[T]he term 'investigation' is defined as '[a] detailed inquiry or systematic examination' or 'a searching inquiry.'" *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016) (citations omitted).

23. It has long been the law that a CRA, such as Experian, does not fulfill its "grave responsibility" to conduct a reinvestigation of a consumer's dispute by merely contacting the creditor who supplied the dispute item. *See, e.g.*, *Pinner v. Schmidt,* 805 F.2d 1258, 1262 (5th Cir. 1986) (concluding it was unreasonable for a credit reporting agency to contact only the creditor in its reinvestigation of a disputed debt); *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1333 (11th Cir.), *on reh'g sub nom. Collins v. Equable Ascent Fin., LLC*, 781 F.3d 1270 (11th Cir. 2015); *Carlisle v. Nat'l Commercial Servs., Inc.*, No. 1:14-cv-515-TWT-LTW, 2016 WL 4544368, at *9 (N.D. Ga. July 22, 2016), *report & recommendation adopted,* No. 1:14-cv-515-TWT, 2016 WL 4532219 (N.D. Ga. Aug. 29, 2016) ("[A] reasonable factfinder could find that merely contacting [the creditor] was not sufficient to determine whether the disputed information was inaccurate.").

24. That "grave responsibility" imposed by the FCRA reinvestigation requirement "must consist of something more than merely parroting information received from other sources." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir.1997).

25. As the Fourth Circuit explained in *Johnson v. MBNA*:

> The key term at issue here, "investigation," is defined as "[a] detailed inquiry or systematic examination." Am. Heritage Dictionary 920 (4th ed.2000); see Webster's Third New Int'l Dictionary 1189 (1981) (defining "investigation" as "a searching inquiry").

357 F.3d 426, 430 (4th Cir. 2004).

26. Further, as Experian is aware, court have repeatedly held that even though the term "investigation" is not used in § 1681e(b), it is clear that Defendant has a duty to conduct a reasonable initial investigation pursuant to § 1681e(b) as well as § 1681i(a) and that this is "central" to the CRAs' duties of care under that portion of the Act:

> This conclusion flows from the plain meaning of both [§1681e(b) and §1681i(a)]. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." *Webster's Third New International Dictionary* 133 (1993). "Maximum" means the "greatest in quantity or highest degree attainable" and "possible" means something "falling within the bounds of what may be done, occur or be conceived . . . ." *Id.* at 1396, 1771. It is difficult to imagine how "maximum possible accuracy" could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a "reinvestigation," necessarily implying that an "investigation" was required to have been performed in the first instance.

*Burke*, 2011 WL 1085874, at *4.

27. It has long been the law – since 1970 in fact – that:

> [W]hen a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.

Fed. Tr. Comm'n, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT (July 2011), at 67.[1]

---

[1] *Available at* https://www.ftc.gov/sites/default/files/documents/reports/40–years–experience–fair–credit–reporting–act–ftc–staff–report–summary–interpretations/110720fcrareport.pdf.

28. Today, furnishers such as DOE/GLELSI and other of Experian's furnishers have their own independent duties under the FCRA, principally those found at 15 U.S.C. § 1681s-2. But while Experian's duties under § 1681e(b) were enacted in 1970 and have governed since, the duties on furnishers are much recent, enacted on in 1996. THE CONSUMER CREDIT REPORTING REFORM ACT OF 1996, Pub. L. No. 104-208 (1996).

***Plaintiff Discovers Experian is Reporting that he owes a student loan debt to DOE/GLELSI***

29. Prior to October 2019, Plaintiff received correspondence that he owed a student loan to DOE/GLELSI.

30. This information was false, as Plaintiff had not applied for new student loans since he had paid off several student loans years ago, nor was he actively attending college.

31. Plaintiff notified DOE/GLELSI that he did not open this account or know anything about it.

32. A subsequent check of Plaintiff's consumer reports revealed and Experian was reporting a student loan with DOE/GLELSI was opened in February 2017 in amount in excess of $8,000.

***Plaintiff disputes the Inaccurate Account with Experian***

33. Having learned that DOE/GLELSI inaccurately reported that he owed this student loan debt to Experian, Plaintiff sent two dispute letters to Experian to attempt to have the account removed from his credit report.

34. In his dispute letter, Plaintiff explained that that the U.S. DEPT OF ED/GLELSI, 182377XXXX student loan account opened February 2017 with a balance $7,997 was not a loan that he initiated and that it did not belong to him.

*Experian Did Not and Does Not*
*Conduct any Investigation of Most Consumer Disputes*

35. Unknown to the Plaintiff until this lawsuit, it has long been the practice of Experian to refuse to perform that statutorily mandated FCRA investigation and instead delegate all action in response to consumer disputes to an affiliated company, Experian Services Chile, S.S. in Santiago, Chile.[2]

36. This dispute processing entity is not hired to perform an actual FCRA investigation. Instead, its sole responsibility is to read consumer dispute letters, select on of a handful of common dispute codes from a drop-down menu and then click that code.

37. In fact, Experian strongly encourage consumers to make disputes through its online website. When consumers do so, the consumer has to click one of just a few available dispute reasons (such as "Not my account."). The online dispute then is outputted into the "e-Oscar" system described below without ever touching human hands or being read by human eyes at Experian. It gets sent to Defendant's creditor customer (such as DOE/GLELSI) for its sole review and consideration.

38. Experian did not conduct any reinvestigation of Plaintiff's disputes. Instead, it merely caused them to be removed from its immediate control to be saved within a database by an overseas data-processing vendor.

---

[2] Experian long ago lost the argument that testimony from these dispute agents requires more than a garden-variety Rule 30 notice. *Calderon v. Experian Info. Sols., Inc.*, 290 F.R.D. 508, 510 (D. Idaho 2013). To the extent Experian would argue here that it cannot produce its Chilean dispute agents pursuant to a Rule 30 notice, then Plaintiff will pursue his 1681i failure-to-investigate claim on the theory that no investigation was conducted by the CRA.

### *Experian Forwarded Plaintiff's Disputes to DOE/GLELSI, Who Did Nothing*

39. In each instance in which Plaintiff disputed the DOE/GLELSI account with Experian, Experian forwarded Plaintiff's disputes to DOE/GLELSI using an electronic system called "e-Oscar," which is an industry-wide process by which such disputes are electronically communicated to furnishers and dispute results back to CRAs.

40. e-Oscar is also the system by which DOE/GLELSI has agreed it will accept such consumer disputes from the CRAs.

41. Under such circumstances, DOE/GLELSI became obligated under the FCRA to investigate Plaintiff's disputes.

42. Plaintiff's disputes to DOE/GLELSI to attempt to have it reinvestigate his complaints went unanswered, as it still continues its report that the Plaintiff is financially responsible for this debt.

43. DOE/GLELSI failed to reinvestigate Plaintiff's complaints.

44. The information furnished by DOE/GLELSI to Experian was at all times inaccurate.

45. On or about a date better known to Experian and DOE/GLELSI, Experian furnished Plaintiff's disputes to DOE/GLELSI.

46. DOE/GLELSI failed to reasonably reinvestigate Plaintiff's disputes that DOE/GLELSI received from Experian in violation of § 1681s-2(b)(1)(A) of the FCRA.

47. Defendant DOE/GLELSI further violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to accurately correct and update or delete Plaintiff's information after receiving Plaintiff's disputes from DOE/GLELSI and prior to the commencement of this action.

48.     Experian responded to Plaintiff's disputes, claiming the information was reported verified as accurate and the information was updated. This response confirms that Experian communicated Plaintiff's dispute to DOE/GLELSI.

49.     By its actions as described herein, DOE/GLELSI furnished false credit information in an attempt to oppress and harass Plaintiff into paying a debt that he did not owe.

### *Plaintiff Suffered Actual Harm*

50.     Experian has continued to report the DOE/GLELSI account on the Plaintiff's credit report, despite being notified that he did not open this account.

51.     Plaintiff has been attempting to resolve these matters with Defendants and his credit was significantly destroyed by Defendants' failure to correct the inaccurate reporting.

52.     As a result of the inaccurate credit reporting, Plaintiff has suffered damages, including, but not limited to:

   a. Stress associated with multiple denials for car leases, personal loans, credit cards, and delays in applying for future lines of credit;

   b. Monies lost by attempting to fix his credit, e.g. communication costs, postage for disputes;

   c. Loss of time attempting to cure the error;

   d. Mental anguish, stress, aggravation, and other related impairments to the enjoyment of life.

53.     Stress associated with attempting to resolve this matter in the last year.

### *Defendants' Conduct Was Willful*

54.     The FCRA allows for a remedy for a "willful" violation. A willful act or violation includes, "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co.*

*of Am. v. Burr*, 551 U.S. 47, at 57 (2007).  A "reckless" action includes conduct whereby "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

55. Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by the Plaintiff and a failure to make the correction right away. *Dalton*, 257 F.3d at 418;  *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 (4th Cir. 2008).

56. As detailed above, the FCRA section at issue here, and informative guidance, have been around now for over 50 years.  The language of § 1681e(b) has not changed. The CRA Defendants' dispute investigation obligations under § 1681i(a) have not changed. The FCRA's caution of Defendants' "grave responsibilities" to ensure accuracy has not changed.

57. Experian has received many disputes and other complaints regarding the creditors at issue in this case—sufficient to require a reasonable company to at least examine or investigate further before blindly accepting further reporting.

58. Just in federal court alone, during the last decade the creditor-furnishers disputed by Plaintiff has had to defend collectively over 1,000 consumer lawsuits.

59. In many or even most of these FCRA lawsuits brought by a consumer, Experian was a named co-defendant.

60. Experian knew or should have known of this litigation history.  They use and have access to PACER to investigate and monitor such consumer complaints.

61. The CFPB has maintained a Consumer Complaint database since 2017.  It receives a small percentage of the total consumer credit reporting complaints made nationwide, as many

11

multiples more are made directly to the Defendant, and/or to other government agencies, attorneys, or non-profit organizations.

62. Each Defendant regularly receives unredacted consumer dispute details from this database.

63. Since the database began accepting complaints in 2017, the CFPB has sent hundreds of thousands of consumer credit reporting complaints to Experian.

64. Further, over 33,000 complaints regarding Experian were based largely on their failure to reasonably investigate consumer disputes.

65. DOE/GLELSI combined has approximately 1,131 such complaints regarding its credit reporting.

66. Just in the last 12 months alone, Experian has each been sued by consumers alleging their violation of the FCRA over 200 times. Most of these alleged that the Defendant violated § 1681i(a) by failing to conduct a lawful reinvestigation of the consumer's accuracy dispute. This complaint history has been true for nearly every year over the last decade.

67. While the thousands of consumer complaints and hundreds of thousands of consumer disputes alone would have put Defendant on notice of the failures of their dispute investigation procedures in ensuring accuracy, numerous Federal District and Circuit Courts have placed Experian on notice that they may not merely "parrot" what their creditor-customer tells them if the consumer had provided a substantive and detailed dispute.

68. Experian has had actual notice from numerous other courts that their blind ACDV "parroting" was unlawful. *See, e.g.*, *Centuori v. Experian Info. Sols., Inc.*, 431 F. Supp. 2d 1002, 1008 (D. Ariz. 2006) ("'The grave responsibility imposed by [the FCRA] must consist of something more than merely parroting information received from other sources.'"); *Schweitzer v.*

*Equifax Info. Sols. LLC*, 441 F. App'x 896, 904 (3d Cir. 2011); *Pourfard v. Equifax Info. Sols. LLC*, 2010 WL 55446 (D. Or. Jan. 7, 2010) ("[T]he caselaw is clear that a reporting agency does not act reasonably under the FCRA by deferring entirely to another source of information.").

69. Experian has also been repeatedly criticized by Federal and state regulators, and consumer groups for the refusal or failure to conduct substantive reinvestigations.

70. In 2015, a large group of state Attorneys General forced a consent order from the Credit Reporting Agencies (including Experian) by which they were required to develop procedures necessary to comply with the FCRA.[3] The AG Settlement required amongst many changes and mandates that Experian comply with § 1681i(a).

71. The AG Settlement also required the Credit Reporting Agencies to conduct significant research and data gathering—even creating a "working group" to address these issues, and to develop special procedures to handle disputes as in this case. Notwithstanding these requirements, Experian did not meaningfully comply with the AG Settlement in these regards.

72. Experian is also aware of substantive and detailed criticism by public interest groups about their automated dispute system. For example, in 2009, the National Consumer Law Center ("NCLC"), the organization that publishes the leading legal treatise in this field, also published a scathing research paper detailing the actual process followed by Defendants when a consumer makes a dispute. That report was updated in 2019. AUTOMATED INJUSTICE REDUX *Ten Years after a Key Report, Consumers Are Still Frustrated Trying to Fix Credit Reporting Errors*, National Consumer Law Center, February 2019. ("NCLC Report").[4]

73. The NCLC Report summarized its context:

---

[3] *Available at* https://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx.
[4] *Available at* https://www.nclc.org/images/pdf/credit_reports/automated-injustice-redux.pdf.

Ten years ago, the National Consumer Law Center (NCLC) issued Automated Injustice: How a Mechanized Dispute System Frustrates Consumers Seeking to Fix Errors in their Credit Reports, the landmark report on the serious dysfunctions in the American credit reporting system. Since then, the Consumer Financial Protection Bureau (CFPB) began exercising supervision authority over the Big Three credit bureaus (Equifax, Experian and TransUnion), and started the difficult task of compelling them to reform their procedures and practices. A coalition of more than 30 state Attorneys General reached a breakthrough settlement with the credit bureaus in 2015, requiring an array of reforms. Despite these very laudable achievements, the credit bureaus and the companies that supply them with information still have serious problems in ensuring the accuracy of credit reports, affecting millions of American consumers. The dispute process required by the Fair Credit Reporting Act (FCRA) that was intended to fix these problems remains ineffective and biased.

74. Among many of the Defendants' accuracy failures, the NCLC Report discovered:

- **Insufficient Information Conveyed and Considered in Investigation**.  Credit bureaus use the highly automated e-OSCAR system to convey disputes to furnishers, primarily using shorthand two- or three-digit codes, and at most only a line or two of text in a minority of instances. The credit bureaus use the same four or five codes over 80% of the time.

- **Failure to Transmit Information Submitted by the Consumer**. Credit bureaus failed to send supporting documentation submitted by consumers to furnishers, in clear violation of the FCRA.

- **Perfunctory Credit Bureau Investigations**. Credit bureaus limit the role of their employees who handle disputes, or of the foreign workers employed by their offshore vendors, to little more than selecting these two or three digit codes. Workers do not examine documents, contact consumers by phone or email, or exercise any form of human discretion in resolving a dispute.

- **Credit Bureaus Always Side with Furnishers**. Credit bureaus are universally biased in favor of furnishers and against consumers in disputes. In a practice known as "parroting," credit bureaus blindly adopted the response of the furnisher without performing any independent review.

NCLC Report at 6.

75. Despite the notice and judicial, regulatory and public interest criticism, Experian has refused to change their dispute investigation process because it would cost too much money to do so.

76. Experian's procedures imposed on the Plaintiff and similarly situated consumers an unjustifiably and unreasonable risk of harm that could have been mitigated or avoided with just modest imposition.

**CLAIMS FOR RELIEF**

**COUNT I**
**Violation of § 1681e(b) of the FCRA – Against Experian**

77. The Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

78. Defendant Experian willfully violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report and consumer files it published and maintained concerning the Plaintiff.

79. As a result of this conduct, action and inaction of Experian, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from a credit, reduction in credit scores, reduction in lines of credit, and denial for various financial products, the mental and emotional pain and anguish and the humiliation and embarrassment of having to borrow money and offer explanations for why he lost the ability to benefit from credit.

80. Further, after the Plaintiff's detailed disputes put Experian on notice of likely inaccuracies and reasons to doubt the correctness of the reporting of its creditor-customers, Experian ignored such information and did not use any human or substantive review to confirm and verify that its procedures were ensuring maximum possible accuracy of the Plaintiff's credit reports.

81. Experian furnished multiple consumer reports to third parties containing the inaccurate tradeline information and Experian did so after receiving notice of these inaccuracies.

82. Experian's conduct, action and inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

83. As a result of Experian's violations of 15 U.S.C. § 1681e(b), the Plaintiff is entitled to recover his actual damages pursuant to 15 U.S.C. § 1681n and/or § 1681o, or in the alternative his statutory damages of $1,000 pursuant to 15 U.S.C. § 1681n.

84. The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
### Violation of § 1681i of the FCRA – Against Experian

85. The Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

86. Experian willfully violated 15 U.S.C. § 1681i by failing to delete inaccurate information in the Plaintiff's consumer file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to Plaintiff's creditors and/or creditors' attorneys; by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

87. Further, Experian violated Section 1681i by conducting *no investigation at all*. Section 1681i demands that when Plaintiff notified Experian directly of his disputes, that party—the consumer reporting agency who received the disputes—must investigate those disputes. The statute does not contemplate someone other than Experian conducting the investigation.

88. As a result of Experian's violations of 15 U.S.C. § 1681i, the Plaintiff is entitled to recover her actual damages pursuant to 15 U.S.C. § 1681n and/or § 1681o, or in the alternative his statutory damages of $1,000 pursuant to 15 U.S.C. § 1681n.

89. Experian's conduct, action, and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

90. The Plaintiff is entitled to recover costs and attorneys' fees from Experian, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
### Violation of § 1681s-2(b)(1)(A) of the FCRA – Against DOE/GLELSI

91. The Plaintiff realleges and incorporates the foregoing paragraphs above as if fully set out herein.

92. Defendants DOE/GLELSI each violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully conduct a reasonable investigation of the Plaintiff's disputes after said disputes was furnished to DOE/GLELSI by Experian.

93. As a result of this conduct, action and inaction of DOE/GLELSI, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from a credit, reduction in credit scores, reduction in lines of credit, and denial for various financial products, the mental and emotional pain and anguish and the humiliation and embarrassment of having to borrow money and offer explanations for why he lost the ability to benefit from credit.

94. DOE/GLELSI's conduct, action and inaction was willful, rendering each individually liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

95. The Plaintiff is entitled to recover costs and attorneys' fees from DOE/GLELSI in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT IV
### Violation of § 1681s-2(b)(1)(E) of the FCRA – Against DOE/GLELSI

96. The Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

97. Defendants DOE/GLELSI each violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to accurately correct and update or delete Plaintiff's information after receiving Plaintiff's dispute from Experian and prior to the commencement of this action. This failure to correct Plaintiff's information resulted from DOE/GLELSI's failure to investigate as articulated herein, after DOE/GLELSI received notice of Plaintiff's dispute from Experian.

98. As a result of this conduct, action and inaction of DOE/GLELSI, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from a credit, reduction in credit scores, reduction in lines of credit, and denial for various financial products, the mental and emotional pain and anguish and the humiliation and embarrassment of having to borrow money and offer explanations for why he lost the ability to benefit from credit.

99. DOE/GLELSI's conduct, action and inaction was willful, rendering each individually liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

100. The Plaintiff is entitled to recover costs and attorneys' fees from DOE/GLELSI in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### JURY DEMAND

101. Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment for actual, statutory and punitive damages against Defendants; for his attorneys' fees and costs; for prejudgment and post-judgment interest at the judgment rate; specific performance and injunctive relief; and such other relief the Court deems just and proper.

June 4, 2021.

                                                      Respectfully submitted,

                                                      **THOMAS C. FIORILLE,**

                                                      By:   */s/ Leonard A. Bennett*
                                                      Leonard A. Bennett, VSB No: 37523
                                                      Craig C. Marchiando, *pro hac forthcoming*
                                                      CONSUMER LITIGATION ASSOCIATES, P.C.
                                                      763 J. Clyde Morris Blvd., Suite 1-A
                                                      Newport News, VA 23601
                                                      (757) 930-3660
                                                      (757) 930-3662 fax
                                                      lenbennett@clalegal.com
                                                      craig@clalegal.com

                                                      ***Attorneys for Plaintiff***